IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


RALPH L. SCOTT                                                    PLAINTIFF

V.                                                                CIVIL ACTION NO.
                                                                  3:09-CV-39-SAA

MICHAEL J. ASTRUE,
Commissioner of Social Security                                   DEFENDANT


## MEMORANDUM OPINION

. This action is brought under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security denying plaintiff Ralph L. Scott's application for period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act. The district court's jurisdiction over Scott's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636 (c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.


## PROCEDURAL HISTORY

Plaintiff filed his application for benefits on July 15, 2005 and alleged the onset of his disability was November 3, 2004. Tr. 12. The claim was denied on May 9, 2006 and on reconsideration on July 19, 2006. *Id*. After the plaintiff timely sought a hearing before an administrative law judge [ALJ] on August 28, 2006, the hearing was held on April 16, 2008. *Id*. The ALJ issued his decision denying the claim on September 2, 2008, . Tr. 12-23. The Appeals

Council denied Scott's request for review, Tr. 1-4, making the ALJ's decision the final decision of the Commissioner, now ripe for the court's review.

## FACTS

Scott was born on May 4, 1966 and was forty-one years old at the time of the ALJ hearing. Tr. 29. Scott testified that he completed the sixth grade and did not obtain a GED. Tr. 29-30. His past relevant work was that of a body shop owner and mechanic and frame builder in a furniture factory. Tr. 32-33. He alleged disability due to "deteriorating vertebras and depression." Tr. 103.

The ALJ determined that Scott had severe impairments that included hypertension, degenerative disc disease at c5-6, chronic lumbosacral strain, right wrist injury and depression. Tr. 14. Although the ALJ determined that these impairments caused more than minimal limitations of the claimant's ability to perform basic work functions, he concluded that the hypertension, back disorders, wrist injury or depression did not meet or equal – either in combination or individually – any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18-19. Upon consideration of Scott's symptoms, the extent to which the symptoms could be considered consistent with the objective medical evidence and the statements of Dr. Cloninger and Dr. Fleetwood, the ALJ determined that Scott retained the residual functional capacity [RFC] to lift and carry, push and pull ten pounds occasionally or frequently, but with no repetitive use of the non-dominant right hand; he could stand/walk for two hours in an eight-hour work day and sit for two hours a day with the ability to alternate as needed between sitting and standing and he had the mental residual functional capacity to perform jobs which entail

occasional contact with the general public and only simple job instructions or tasks. Tr. 19. Based upon the testimony of the vocational expert [VE], the ALJ found that considering Scott's age, work experience and RFC, a significant number of jobs exist in the national economy for sedentary unskilled work that Scott could perform, including those of a grater or sorter and a production manager. Tr. 22.

## DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If

---

[1] *See* 20 C.F.R. §§ 404.1520 (2009).

[2] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b)(2009).

[4] 20 C.F.R. §§ 404.1520(c)(2009).

[5] 20 C.F.R. § 404.1520(d)(2009). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525 (2009).

plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

Scott contends that the Commissioner erred by (a) improperly relying upon the opinion of a non-examining physician; and (2) failing to follow the guidelines established in SSR00-04p when relying on the VE's testimony.

<u>Improperly Relying on a Non-Examining Physician's Opinion</u>

---

[6] 20 C.F.R. §§ 404.1520(e); 1520(f)(2009).

[7] 20 C.F.R §§ 404.1520(g)(1)(2009).

[8] *Muse*, 925 F.2d at 789.

4

Scott alleges that the Commissioner erred by giving the "greatest weight" to the opinion of Kenneth L. Cloninger, M.D., who reviewed Scott's medical record and answered interrogatories posed by the ALJ, but did not physically examine Scott. Docket # 9, p. 10-14. After the hearing, the ALJ sent interrogatories and plaintiff's medical records to Dr. Cloninger. Tr. 16. Scott objects to the ALJ giving any weight to Dr. Cloninger's opinion because Scott was not personally examined by Dr. Cloninger. Tr. 16, Docket #9, p.13. Scott claims that "contrary to Dr. Cloninger's opinion, the medical evidence, . . . did establish that Mr. Scott suffered with degenerative disc disease that was impinging on a nerve root . . . as required by Listing 1.04A." (Emphasis in original deleted). Docket # 9, p. 15.

The ALJ thoroughly discussed Scott's objective medical evidence, evaluations by treating physicians, the evaluation by Dr. Cloninger and Scott's objections to Dr. Cloninger's evaluation. Tr. 14-17. The ALJ afforded Dr. Cloninger's conclusions the greatest weight because of his experience and training as a board certified nuerosurgeon, because his assessment was consistent with the evidence as a whole and because Dr. Cloninger afforded Scott the greatest physical limitations. Scott asserts that Dr. Cloninger did not review all the medical evidence properly because he did not note certain medical entries that plaintiff deems important. Docket #9, p. 13. As noted by the ALJ, however, Dr. Cloninger represented that he reviewed all the evidence presented to him. Tr. 370. Scott also argues that the ALJ committed an error of law when he relied on a non-examining physician's opinion because it contradicted that of the examining physicians. Docket # 9, p. 13-14. Dr. Fleetwood's medical source statement following examination of plaintiff was not inconsistent with Dr. Cloninger's statement, and the ALJ did afford it some weight, but further reduced Dr. Fleetwood's RFC in light of Dr.

5

Cloninger's assessment. Tr. 16, 350-52. The court finds the ALJ's reasoning to be supported by substantial evidence and concludes that Scott's argument is without merit.

### Compliance with SSR 00-4p in Using Vocational Expert Testimony

At Step 5 of the sequential evaluation process, the burden rests on the Commissioner to prove that Scott is able to perform other work. The ALJ determined that Scott retained the RFC to lift and carry and push and pull ten pounds occasionally or frequently, but could not sustain repetitive use of the non-dominant right hand; stand/walk for two hours in an eight-hour work day and sit for two hours a day, with the ability to alternate as needed between sitting and standing and had the mental residual functional capacity to perform jobs which entail occasional contact with the general public and only simple job instructions or tasks. Tr. 19. At the beginning of his testimony the VE asserted that his testimony would be consistent with the Dictionary of Occupational Titles [DOT], and he agreed to notify the ALJ if at any time his testimony deviated from the DOT. Tr. 28-29. He thereafter testified that Scott could perform the occupations of a grater or sorter (DOT # 734.687-082), a semi-skilled sedentary job, and a production monitor (DOT# 739.687-182), an unskilled sedentary job. Tr. 22, 51.

Scott argues that the ALJ violated the requirement of SSR 00-4p that he must reconcile any conflict between the DOT and the testimony of the VE. Docket 11. The grater/sorter position is a semi-skilled job.[9] Because the VE testified that this job was an unskilled position, his testimony was inconsistent with the DOT. Tr. 51. The VE also testified that DOT # 739.687-182 described a "production monitor." Tr. 51. In actuality the DOT number is for that of a "table worker." Docket # 10, p. 7. The Commissioner acknowledges that

---

[9] The Commissioner acknowledges that grater/sorter is a semi-skilled job. Docket # 10, p.8. Plaintiff submits that he has no transferable skills. Docket # 11, p. 2.

the VE proffered the wrong title for the position, but asserts that because the description of table worker does not require handling, reaching and sorting, any improper identification of the job title by the VE is immaterial because Scott would not be required to perform any repetitive use of his non-dominant hand.  Docket #   SSR 00-4p provides:

> When a VE or VS provides evidence about the requirements of a job or
> occupation, the adjudicator has an affirmative responsibility to ask about
> any possible conflict between that VE or VS evidence and information
> provided in the DOT. In these situations, the adjudicator will:
> ask the VE or VS if the evidence he or she has provided conflicts with information
> provided in the DOT; and if the VE's or VS's evidence appears to conflict with the
> DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, *4.

The record clearly establishes that at the beginning of his questions to the VE the ALJ addressed this consideration by inquiring whether the VE's testimony would be consistent with the DOT. Tr. 28.  In his written decision, the ALJ again addressed this requirement by stating "Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Docket # 22. Although the ALJ may have recognized the requirements of SSR 00-4p, however, the VE's testimony concerning the existence of jobs that Scott could perform was not consistent with the DOT as he misidentified the skill level of one job and incorrectly identified a job description and its corresponding DOT identification number in the other.  The ALJ's reliance on the VE's testimony to determine that Scott could make a successful adjustment to other work that exists in significant numbers in the national economy was misplaced.  Because there is a clear conflict between the VE's testimony and the DOT, the court cannot conclude that substantial evidence supports the ALJ's finding that Scott can make a successful adjustment to other work.  As such,

7

this case must be remanded to the Commissioner for further proceedings, including additional VE testimony, in accordance with this opinion. A separate final judgment in accordance with these findings will issue this day.

This the 1st day of June, 2010.

/s/   S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE